1

2

3

4

5

6          UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF WASHINGTON
7

8    JACQUETTA BELTON-TATE,

9          Plaintiff,                          No.  1:16-CV-03083-RHW

          v.
10
                                               **ORDER GRANTING**
11   NANCY A. BERRYHILL                         **DEFENDANT'S MOTION FOR**
     (PREVIOUSLY CAROLYN W.                     **SUMMARY JUDGMENT**
     COLVIN), Acting Commissioner of
12   Social Security,[1]

13         Defendant.

14         Before the Court are the parties' cross-motions for summary judgment, ECF

15   Nos. 17 & 21. Ms. Belton-Tate brings this action seeking judicial review, pursuant

16   to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her

17   application for Disability Insurance Benefits under Title II of the Social Security

18   Act, 42 U.S.C §§ 401-434. After reviewing the administrative record and briefs

19

20   _____
     [1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule
     25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the
     defendant in this suit. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

     **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT ~ 1**

filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I.    Jurisdiction

Ms. Belton-Tate protectively filed this application for Disability Insurance Benefits on August 5, 2010. AR 20, 289-90. Her alleged onset date is March 15, 1999. AR 20, 289. Ms. Belton-Tate's application was initially denied on February 24, 2011, AR 167-69, and on reconsideration on April 14, 2011, AR 178-85.

Hearings with Administrative Law Judge ("ALJ") Mary Gallagher Dilley occurred on August 21, 2013, AR 48-62, November 14, 2013, AR 63-72, and June 3, 2014, AR 73-114. On August 28, 2014, the ALJ issued a decision finding Ms. Belton-Tate ineligible for disability benefits. AR 20-41. The Appeals Council denied Ms. Belton-Tate's request for review on March 11, 2016, AR 1-3, making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Belton-Tate timely filed the present action challenging the denial of benefits, on May 10, 2016. ECF No. 3. Accordingly, Ms. Belton-Tate's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

1  mental impairment which can be expected to result in death or which has lasted or

2  can be expected to last for a continuous period of not less than twelve months." 42

3  U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be

4  under a disability only if the claimant's impairments are of such severity that the

5  claimant is not only unable to do his previous work, but cannot, considering

6  claimant's age, education, and work experience, engage in any other substantial

7  gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) &

8  1382c(a)(3)(B).

9      The Commissioner has established a five-step sequential evaluation process

10  for determining whether a claimant is disabled within the meaning of the Social

11  Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v.*

12  *Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

13      Step one inquires whether the claimant is presently engaged in "substantial

14  gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful

15  activity is defined as significant physical or mental activities done or usually done

16  for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in

17  substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§

18  404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

19      Step two asks whether the claimant has a severe impairment, or combination

20  of impairments, that significantly limits the claimant's physical or mental ability to

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc.*

*Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

### IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and only briefly summarized here. Ms. Belton-Tate was 43 years old at the alleged date of onset. AR 39, 123, 140, 289, 300. Her date last insured was December 31, 2004. AR 20, 24, 39, 41, 123, 140, 148, 167, 316. She has at least a high school

education, a two year nursing degree, and is able to communicate in English. AR 28, 39, 318, 320, 658, 963.

The ALJ found Ms. Belton-Tate to suffer from degenerative disc disease of the lumbar spine, obesity, affective disorder not otherwise specified, post-traumatic stress disorder, personality disorder not otherwise specified, and polysubstance use disorder. AR 24. Ms. Belton-Tate previously worked as a registered nurse. AR 25, 39, 151, 292-97, 308-12, 320, 345. She has a history of alcohol, marijuana, amphetamine, heroin, speed, and prescription drug use. AR 26, 29-32, 34, 37, 87-89, 129, 480, 511, 535-40, 605, 623, 963.

## V.    The ALJ's Findings

The ALJ determined that Ms. Belton-Tate was not under a disability within the meaning of the Act from March 15, 1999, her alleged date of onset, through December 31, 2004, her date last insured. AR 41.

**At step one**, the ALJ found that Ms. Belton-Tate had not engaged in substantial gainful activity from March 15, 1999 through December 31, 2004 (citing 20 C.F.R. § 404.1571 *et seq.*). AR 24.

**At step two**, the ALJ found Ms. Belton-Tate had the following severe impairments: degenerative disc disease of the lumbar spine, obesity, affective disorder not otherwise specified, post-traumatic stress disorder, personality

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7**

disorder not otherwise specified, and polysubstance use disorder (citing 20 C.F.R. § 404.1520(c)). AR 24.

At **step three**, the ALJ found that through the date last insured, Ms. Belton-Tate did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 26-28.

At **step four**, the ALJ found, through the date last insured, Ms. Belton-Tate had the residual functional capacity to lift and carry ten pounds frequently and twenty pounds occasionally; she could stand and/or walk six hours in an eight-hour workday; she could sit for six hours in the same period; she needed to avoid concentrated exposure to vibration; and she was able to perform work that required no more than superficial interactions with coworkers and the public, meaning no teamwork or involved personal contact. AR 28-39.

The ALJ determined that through the date last insured, Ms. Belton-Tate was unable to perform her past relevant work. AR 39.

At **step five**, the ALJ found that through the date last insured, in light of her age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could have performed. AR 40-41.

## VI.    Issues for Review

Ms. Belton-Tate argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) improperly evaluating Ms. Belton-Tate's mental impairments at step two of the sequential evaluation process; (2) failing to determine Ms. Belton-Tate's onset date of disability pursuant to SSR 83-20; (3) improperly discrediting Ms. Belton-Tate's subjective complaint testimony; and (4) improperly weighing the medical evidence at step three of the sequential evaluation process and in determining the RFC.

## VII.    Discussion

### A. The ALJ did not err at step two.

At step two in the five-step sequential evaluation for Social Security cases, the ALJ must determine whether a claimant has a medically severe impairment or combination of impairments. An impairment is found to be not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (quoting SSR 85-28). Step two is generally "a de minimis screening device [used] to dispose of groundless claims," and the ALJ is permitted to find a claimant lacks a medically severe impairment only when the conclusion is clearly established by the

1    record. *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen v.*

2    *Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)).

3        Under step 2, an impairment is not severe if it does not significantly limit a

4    claimant's ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d

5    1152, 1159 (9th Cir. 2001) (citing 20 C.F.R. § 404.1521(a)(b)). These include the

6    ability to respond appropriately to supervision, co-workers, and usual work

7    situations. Id. (citing 20 C.F.R. § 404.1521(b)(5)).

8        A diagnosis from an "acceptable medical source," such as a licensed

9    physician or certified psychologist, is necessary to establish a medically

10   determinable impairment. 20 C.F.R. § 404.1513(d). Importantly however, a

11   diagnosis itself does not equate to a finding of severity. *Edlund*, 253 F.3d at 1159-

12   60 (plaintiff has the burden of proving this impairment or their symptoms affect

13   her ability to perform basic work activities); *see also Mcleod v. Astrue*, 640 F.3d

14   881, 885 (9th Cir. 2011).

15       First, Ms. Belton-Tate contends that the ALJ erred when determining that a

16   somatoform disorder was not medically determinable prior to the date last insured

17   on December 31, 2004. The ALJ determined that a somatization disorder is not a

18   medically determinable impairment because there is documented diagnosis for

19   such a disorder prior to her date last insured, and Ms. Belton-Tate's erratic displays

20

1  of non-physiological symptoms was more consistent with a strategic

2  misrepresentation of her symptoms.

3      Ms. Belton-Tate argues that this determination was incorrect for three briefly

4  stated reasons. First, she argues, citing to AR 593 and 657, that her providers found

5  her to display somatization symptoms in 2003 and 2007. However, a physical or

6  mental impairment must be established by medical evidence consisting of signs,

7  symptoms, and laboratory findings, and cannot be established on the basis of a

8  claimant's symptoms alone. See 20 C.F.R. § 404.1508, and SSR 96-4p.

9  Additionally, neither of the reports cited to provide a medical diagnosis. Dr.

10  Ashworth states that the results of the testing performed in 2007, years after the

11  date last insured, were consistent with possible somatization. AR 653, 657. Dr.

12  Gray's report states that Ms. Belton-Tate may be "almost bordering on a

13  somatization type of problem." AR 593. Next, Ms. Belton-Tate contends the record

14  provides two diagnoses in 2009 and 2010 of somatization disorder with an onset in

15  2002. However, neither Christopher J. Clark, LMHC, nor Russell Anderson,

16  LICSW, are acceptable medical sources, and a diagnosis from an "acceptable

17  medical source," is necessary to establish a medically determinable impairment. 20

18  C.F.R. § 404.1513(d). Finally, Ms. Belton-Tate points to the June 27, 2014 opinion

19  of non-examining psychological medical expert Kenneth N. Asher, Ph.D., to

20  contend that she had a somatization disorder during the relevant period. AR 1191.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11**

1   The ALJ, however, properly gave minimal to no weight to Dr. Asher's opinion for

2   the reasons set forth in a later section of this order. *See infra* at 20-22, 24-25.

3       Second, Ms. Belton-Tate argues that the ALJ erred by finding she had the

4   severe impairment of "affective disorder not otherwise specified" rather than

5   specifically categorizing her impairment as bipolar disorder. The record shows that

6   a number of Ms. Belton-Tate's providers did mention the possibility of bipolar

7   disorder. AR 492, 528, 637, 649-50, 955-56, 967, 992. However, there was never a

8   diagnosis of bipolar disorder from an acceptable medical source, and a diagnosis

9   from an "acceptable medical source," is necessary to establish a medically

10  determinable impairment. 20 C.F.R. § 404.1513(d). The record also shows that

11  bipolar disorder had been ruled out by at least one provider, and while some

12  providers mentioned the possibility of a bipolar disorder, the record clearly states

13  there was never any formal diagnosis or objective testing. AR 131, 148, 398, 583,

14  671. On the other hand, Ms. Belton-Tate was diagnosed with "affective disorder

15  not otherwise specified" by two acceptable medical sources who specifically stated

16  the diagnosis was during the relevant period. AR 130-31, 148.

17      Furthermore, because Ms. Belton-Tate was found to have at least one severe

18  impairment, this case was not resolved at step two. Here, the ALJ's step three and

19  RFC findings properly incorporated the limitations identified by medical and other

20  sources, including those limitations related to listing 12.04 for affective disorders,

which includes consideration of manic and bipolar syndromes. 20 C.F.R. Pt. 404, Subpt. P, App. 1, listing 12.04.

Accordingly, the ALJ did not err in evaluating Ms. Belton-Tate's mental impairments at step two.

### B. The ALJ Did Not Err in Not Determining an Onset Date of Disability.

Ms. Belton-Tate argues the ALJ failed to meet her duty by failing to determine a disability onset date pursuant to SSR 83-20.

In Social Security cases, SSR 83-20 directs that "[i]n addition to determining that an individual is disabled, the decision maker must also establish the onset date of disability." Implicit in this language, is that the individual must first have been found disabled by the ALJ, which did not occur in the case at hand. Ms. Belton-Tate contends that the ALJ should have inferred an onset date because she filed a separate application and claim for Supplemental Security Income disability benefits under Title XVI in 2013 that was approved in a separate process. AR 22.

Here, the ALJ declined to escalate Ms. Belton-Tate's Title XVI application for Supplemental Security Income disability benefits to her Title II disability insurance benefits application to adjudicate both claims because of the significant lapse in time between the date last insured in December 2004 and the protective May 16, 2013 filing date of her Title XVI application for Supplemental Security Income disability benefits AR 22, 384, 386. The ALJ determined that Ms. Belton-

Tate's Title XVI application should be considered separately from her Title II application. AR 22. In the case at hand, the ALJ's decision adjudicated solely Ms. Belton-Tate's Title II claim for disability insurance benefits during the relevant time period from the alleged disability onset date of March 15, 1999 through the December 31, 2004 date last insured and found that she was not disabled during this time period. AR 20-41.

The Court addresses Ms. Belton-Tate's assertions of ALJ error based on review of the ALJ's final decision she appealed to this Court finding that she was not disabled at any time during the relevant time period which was based solely on her Title II application for disability insurance benefits, regardless of whether a different adjudicator under a different application filed at a much later date determined that she was disabled under a separate claim in a later time period. *See Delgado v. Heckler*, 722 F.2d 570, 572 n.1 (9th Cir. 1983) (where a claimant was granted social security disability benefits based on filing a new application, the Court found that his claim was limited to the period during which he was denied disability benefits by the ALJ on a prior application). Because the ALJ found that Ms. Belton-Tate was not disabled at any time during the relevant time period with respect to her Title II application for disability insurance benefits, the question of the date of onset of disability did not arise; therefore, the ALJ was not required by

1  SSR 83-20 to consider the issue of, and obtain medical expert testimony to assist

2  in, inferring an onset of disability date.

3  Accordingly, the ALJ did not err by not determining a disability onset date

4  because the ALJ determined Ms. Belton-Tate was not disabled during the relevant

5  period. The record before the ALJ was neither ambiguous nor inadequate to allow

6  for proper evaluation of the evidence and substantial evidence supported the ALJ's

7  decision that Ms. Belton-Tate was not disabled.

8  **C. The ALJ Properly Discounted Ms. Belton-Tate's Credibility.**

9  An ALJ engages in a two-step analysis to determine whether a claimant's

10  testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533

11  F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective

12  medical evidence of an underlying impairment or impairments that could

13  reasonably be expected to produce some degree of the symptoms alleged. *Id.*

14  Second, if the claimant meets this threshold, and there is no affirmative evidence

15  suggesting malingering, "the ALJ can reject the claimant's testimony about the

16  severity of [her] symptoms only by offering specific, clear, and convincing reasons

17  for doing so." *Id.*

18  In weighing a claimant's credibility, the ALJ may consider many factors,

19  including, "(1) ordinary techniques of credibility evaluation, such as the claimant's

20  reputation for lying, prior inconsistent statements concerning the symptoms, and

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 15**

1    other testimony by the claimant that appears less than candid; (2) unexplained or

2    inadequately explained failure to seek treatment or to follow a prescribed course of

3    treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When

4    evidence reasonably supports either confirming or reversing the ALJ's decision, the

5    Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180

6    F.3d 1094, 1098 (9th Cir.1999).

7           In this case, there is substantial affirmative evidence of malingering. The

8    ALJ stated that Ms. Belton-Tate has been exaggerating the nature and severity of

9    her impairments in a strategic manner for secondary gain in the way of the

10   continuation of state assistance and for the purpose of receiving prescription drugs.

11   AR 29, 33-34. The ALJ also noted objective medical evidence with respect to

12   symptoms exaggeration, a tendency to be manipulative, and poor motivation. AR

13   29-34, 538, 539. Dr. Gray described Ms. Belton-Tate's performance as

14   "exaggerated." AR 22, 511-12. She became angry when Dr. Andrews alluded to

15   needing more proof regarding her alleged physical disability and walked out,

16   displaying normal gait and station, when her complaint of disability was not

17   accepted on face value, rejecting free medical treatment. AR 30, 613, 623. She has

18   indicated that she is seeking controlled substances, would not allow herself to be

19   evaluated without being given drugs first, and stormed out of the ER without an

20   issue, and dragged her foot while walking though she exhibited full strength in her

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16**

lower extremities. AR 30-31, 545-52, 694-703. Additionally, Dr. Jay Toews, conducted SIMS and the Minnesota Multiphasic Personality Inventory (MMPI-2) tests which indicated a high probability of symptom exaggeration and/or fabrication, that Ms. Belton-Tate tended to be manipulative, and suggested poor motivation. AR 32-33, 536-39. Dr. Scottolini stated Ms. Belton-Tate is prone to exaggeration, poor effort, crudity of expression, and even feigning symptoms, and he noted her tests indicate malingering. AR 129, 135. This affirmative evidence alone is sufficient to support a negative credibility determination. *See Benton ex. el. Benton v. Barnhart,* 331 F.3d 1030, 1040 (9th Cir.2003) (finding of affirmative evidence of malingering will support a rejection of a claimant's testimony).

Further, in addition to identifying malingering, the ALJ provided other specific, clear, and convincing reasons to reject Ms. Belton-Tate's credibility. AR 29-34. Including inadequately seeking medical treatment and failing to follow prescribed treatment, repeated and frequent inconsistent statements and inconsistency in the record; and activities of daily living that are inconsistent with her alleged level of impairment. *Id*. All of which independently constitute legally sufficient reasons supported by the record for the ALJ's credibility determination, in addition to the affirmative evidence of malingering.

The Court does not find the ALJ erred when assessing Ms. Belton-Tate's credibility because of the affirmative evidence of malingering, and her reported disabling impairments are inconsistent with the record as a whole.

**D. The ALJ Properly Weighed the Medical Evidence.**

**1.  Legal Standard.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. An ALJ may reject the opinion of a non-examining doctor by reference to specific evidence in the medical record. *See Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

**2. The ALJ properly assessed the evidence at step three.**

Ms. Belton-Tate contends that her impairments meet the criteria of the "paragraph B" listing. A claimant is presumptively disabled and entitled to benefits if he or she meets or equals a listed impairment. The listings describe, for each of the major body systems, impairments which are considered severe enough alone to prevent a person from performing gainful activity. 20 C.F.R. §§ 404.1525, 416.925.

At step three of the sequential evaluation process, it is the claimant's burden to prove that her impairments meet or equal one of the impairments listed. *Oviatt v. Com'r of Soc. Sec. Admin.*, 303 F. App'x 519, 523 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir.2007); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir.2005). To meet a listed impairment, a disability claimant must establish that her condition satisfies each element of the listed impairment in question. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999). To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings at least equal in severity and duration to each element of the most similar listed impairment. *Tackett*, 180 F.3d at 1099-1100 (quoting 20 C.F.R. 404.1526).

The paragraph B criteria are met when at least two of the following are met: marked limitations in activities of daily living; marked limitations in social

functioning; marked limitations in concentration, persistence, or pace; or repeated episodes of decompensation. The ALJ made specific findings in each of the four functional areas, per 20 C.F.R. §§ 404.1520a, 416.920a. AR 20-21. In activities of daily living, the ALJ found a mild restriction; in social functioning, the ALJ found moderate difficulties; with regard to concentration, persistence or pace, the ALJ found mild difficulties; and the ALJ found no episodes of decompensation. AR 27.

Ms. Belton-Tate argues that the ALJ erred at step three by giving significant weight to the opinion of non-examining State agency psychologist James Bailey, Ph.D., that she did not meet the paragraph B criteria (AR 27, 38, 135), and by giving minimal to no weight to the opinion of non-examining psychological medical expert Kenneth N. Asher, Ph.D., that she did meet the paragraph B criteria (AR 37-38, 1192).

Importantly, Ms. Belton-Tate attempts to meet her burden of establishing that she meets the paragraph B listing based only on her rejection of Dr. Bailey's opinion and her acceptance of Dr. Asher's opinion. However, the ALJ properly discounted Dr. Asher's opinion. An ALJ may reject the opinion of a non-examining doctor by reference to specific evidence in the medical record. *See Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). The ALJ's decision specifically noted Dr. Asher's opinion as to the paragraph B criteria and provided reasons for giving the opinion minimal to no weight. AR 37-38, 1192.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20**

The ALJ gave minimal to no weight to Dr. Asher's opinions of Ms. Belton-Tate's functioning prior to the date last insured because Dr. Asher stated that Ms. Belton-Tate's severe psychological issues began in late 2001 and "[i]ndicated that the sole basis for his opinion was the claimant's testimony," and did not refer to any specific objective evidence in support of this particular opinion. AR 37, 1187-1193. He expressed his assessment was otherwise supported by the claimant's inappropriate behavior during medical examination, as well as her frequent failure to complete mental health examinations." AR 38, 1188. However, as stated above, the ALJ properly discredited Ms. Belton-Tate and found that her inappropriate behavior and lack of cooperation with psychological examinations was indicative of her general lack of credibility regarding her physical and social functioning. AR 38. An ALJ may discount even a treating provider's opinion if it is based largely on the claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant not credible. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

Dr. Asher's opinion was also given minimal to no weight because it is inconsistent with the record as a whole and Ms. Belton-Tate was not as limited as Dr. Asher asserts. AR 38. The record demonstrates that Ms. Belton-Tate was able to work in a skilled profession, as a nurse, despite pre-existing psychological issues and concurrent substance abuse, and she generally lacked any psychological treatment prior to her date last insured. An ALJ may properly reject an opinion that

provides restrictions that appear inconsistent with the claimant's level of activity. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). The ALJ also gave minimal to no weight to Dr. Asher's opinion, in part, because he "gave undetailed references to a variety of exhibits, the majority of which are subsequent to the relevant period for this decision." AR 38, 1191, 1192. An ALJ can reject a doctor's assessment that is not substantiated by medical evidence relevant to the period in question. See *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

Additionally, the ALJ's findings are also supported by the medical opinion of Dr. Bailey, who determined, after reviewing the evidence, that Ms. Belton-Tate's mental impairments did not meet or equal the paragraph B listing. AR 26-27, 131. Dr. Bailey opined that Ms. Belton-Tate had mild restrictions in activities of daily living and mild difficulties in maintaining concentration, persistence or pace; moderate difficulties in maintaining social functioning; and no episodes of decompensation of extended duration. AR 131. While Dr. Bailey provided this medical opinion in November 2010, the ALJ afforded the opinion significant weight because it is consistent with Ms. Belton-Tate's evidence of the record prior to her date last insured. AR 26.

Furthermore, the ALJ supported her determination that Ms. Belton-Tate did not meet the requirements of paragraph B by significant reference to the record and Ms. Belton-Tate's level of psychological functioning. Including the fact that Ms.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22**

1    Belton-Tate was gainfully employed as a nurse during part of the relevant period,

2    despite psychological impairment since at least 1985, and concurrent drug use. AR

3    26, 396, 87-88, 107, 345, 300-02. Additionally, following her alleged onset date in

4    1999, Ms. Belton-Tate has no documented mental health care prior to a

5    prescription in April 2002, then no subsequent treatment until August 2003, then

6    no medical treatment until June 2004 for a neck injury and one time each during

7    the following two months during which she requested an antidepressant, though

8    none was given at the time because she did not appear to have any psychomotor

9    depression. AR 26-27, 492, 596-97. In November 2004, Ms. Belton-Tate denied

10   any need or diagnosis of mental health problems, and she has no documented

11   instances of psychiatric hospitalizations prior to her date last insured. AR 27, 479-

12   84. Additionally, Ms. Belton-Tate testified to using public transportation, visiting

13   museums, and maintaining friendships during the period prior to the date last

14   insured. AR 27, 87-88.

15          When the ALJ presents a reasonable interpretation that is supported by

16   substantial evidence, it is not the role of the courts to second-guess it. *Rollins v.*

17   *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Court "must uphold the ALJ's

18   findings if they are supported by inferences reasonably drawn from the record."

19   *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v.*

20   *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 23

1  than one rational interpretation, one of which supports the ALJ's decision, the

2  conclusion must be upheld").

3      The ALJ properly considered whether Ms. Belton-Tate's impairments met

4  the paragraph B listing and did not err in determining that the listing was not met.

5      **3.  Dr. Asher.**

6      Dr. Asher, Ph.D., was a non-examining psychological medical expert that

7  provided a medical source statement in June 2014. AR 1187-1195. The ALJ gave

8  minimal to no weight to Dr. Asher's opinions regarding Ms. Belton-Tate's

9  functioning prior to the date last insured. AR 37-38. Ms. Belton-Tate contends that

10  the ALJ erred in rejecting the opinions of Dr. Asher and not incorporating the

11  severe limitations he asserts when assessing the RFC.

12      As previously stated and only briefly addressed here, the opinions of Dr.

13  Asher were properly rejected. *Supra* at 20-22. The ALJ gave minimal to no weight

14  to part of Dr. Asher's opinion of Ms. Belton-Tate's functioning prior to the date

15  last insured in part because it was based on Ms. Belton-Tate's subjective

16  complaints, and the ALJ properly discredited Ms. Belton-Tate and found that her

17  inappropriate behavior and lack of cooperation with psychological examinations

18  was indicative of her general lack of credibility regarding her physical and social

19  functioning. AR 38. An ALJ may discount even a treating provider's opinion if it

20  is based largely on the claimant's self-reports and not on clinical evidence, and the

1   ALJ finds the claimant not credible. *Ghanim*, 763 F.3d at 1162. Dr. Asher's

2   opinion was also given minimal to no weight because it is inconsistent with the

3   record as a whole and Ms. Belton-Tate was not as limited as Dr. Asher asserts. AR

4   38. An ALJ may properly reject an opinion that provides restrictions that appear

5   inconsistent with the claimant's level of activity. *Rollins*, 261 F.3d at 856. The ALJ

6   also gave minimal to no weight to Dr. Asher's opinion, in part, because he "gave

7   undetailed references to a variety of exhibits, the majority of which are subsequent

8   to the relevant period for this decision." AR 38, 1191, 1192. An ALJ can reject a

9   doctor's assessment that is not substantiated by medical evidence relevant to the

10  period in question. See *Johnson*, 60 F.3d at 1433.

11      In assigning minimal to no weight to Dr. Asher's opinion, the ALJ supported

12  the determination by reference to specific evidence in the medical record and with

13  specific and legitimate reasons supported by substantial evidence in the record.

14  Thus, the ALJ did not err in her consideration of Dr. Asher's opinion or in

15  assessing the RFC.

16      **4.  The ALJ properly considered the longitudinal record.**

17      Ms. Belton-Tate very briefly contends that the ALJ erred by generally giving

18  minimal weight to medical opinion evidence subsequent to the date last insured

19  and not using those opinions to determine Ms. Belton-Tate's onset of disability

20  pursuant to SSR 83-20.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25**

However, as previously stated, SSR 83-20 directs that "[i]n addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability." The individual must have first been found disabled, which did not occur in the case at hand. Because the ALJ found that Ms. Belton-Tate was not disabled at any time during the relevant time period with respect to her Title II application for disability insurance benefits, the question of the date of onset of disability did not arise. Therefore, SSR 83-20 does not apply in the instant case and the ALJ was not required by SSR 83-20 to consider the issue of, and obtain medical expert testimony to assist in, inferring an onset of disability date. Furthermore, not only does SSR not apply in the case at hand, an ALJ can reject a doctor's assessment that is not substantiated by medical evidence relevant to the period in question. *See Johnson*, 60 F.3d at 1433.

Accordingly, the ALJ did not err in assigning minimal weight to several medical opinions given after the date last insured, and the ALJ did not err by not determining a disability onset date because substantial evidence supported the ALJ's decision that Ms. Belton-Tate was not disabled.

## VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 26

1. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 21,** is

**GRANTED.**

3. **Judgment shall be entered in favor of Defendant** and the file shall be

**CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order,

forward copies to counsel and **close the file**.

**DATED** this 31st day of March, 2017.


_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 27**